*340 Opinion of the Court, by
Judge Mills.
William Hardin, jun. exhibited his bill in chancery, on court below, against his father, William Hardin, sen. and Samuel Baird, representing that he had purchased two lots in the town of Hardinsburg, known by their numbers 21 and 24, for £100; that, instead of taking the conveyance to himself, “ for good causes, which were not necessary to be set out,” he had the conveyance for the said lots executed by Friend M’Mahan, the vender, to the said William, sen. and afterwards took a bond from the said William, sen. for a conveyance of said lots; and he exhibits the bond, which binds the said William, sen. to convey, not only these lots, but divers others, and one or more tracts of land; that while things lay in this situation, his father sold and conveyed said lots to Samuel Baird, without his will or consent, unfairly, and greatly to his prejudice. He then charges, that Baird had full knowledge and notice of his claim, anterior to the purchase, and that they were held by the said William Hardin, sen. in trust for him, and that he forewarned Baird not to improve or meddle with the lots, and prays a conveyance and general relief.
Baird died after the execution of the subpœna, and before answer. A bill of revivor being filed, and a guardian appointed for his heirs, who were all infants, the guardian answered, admitting the legal title and possession to be with the infant heirs, and the purchase from William Hardin, sen.; professes ignorance of the title set up in the bill, and denies notice to Baird, before his purchase, of the equity now asserted. He *341 makes his answer one in the nature of a cross bill against the complainant and William Hardin, sen. and calls upon the said William, sen. to answer and say whether a valuable consideration was given, and how much. He requires both the complainant and William Hardin, sen. to answer what was the consideration which passed between them for the bond aforesaid, and by whom they can prove the consideration, and for what object the transfer was made to William, sen. instead of William, jun. and for what object the bond was executed to the complainant, for the lots; and whether William Hardin, sen. did not pay William Hardin, jun. about forty dollars, as a whole or part satisfaction for the interest of William, jun. in the lots, and whether his claim was not in whole or part satisfied. He further alleges, that a certain Mrs. Merry, whom he also makes a party to his answer, purchased the lots in question at a sheriff’s sale under execution against both William Hardin, sen. and jun. and calls upon her for her claim. He further requires of both William Hardin, sen. and William Hardin, jun. to say whether they had not conversed together, and concluded that of the complainant recovered the lots, he, the said William, sen. would have to pay only the purchase money and interest, to Baird, and therefore, as the lots were risen in value, he, said complainant, was to recover them. He prays that if the claim of Mrs. Merry or the complainant shall prove superior, William Hardin, sen. may be compelled to pay the full increased value of the lots, and one or both of them be made to account for the improvements made by Baird.
In such case, a bill may be filed on the bond, and a conveyance decreed, the trust being a sufficient consideration to take of the case out of the principle that equity will not sustain a bill to enforce the performance of a voluntary agreement.
Where a bill alleges that a deed of con veyance was made with a design to defraud creditors, and requires an answer whether that was the design, and if it was not, what was the design & consideration of the conveyance and the defendant answers, denying distrinctly all intention of defrauding creditors, but declines answering as to the real consideration or intent of the conveyance, the court cannot presume a base consideration, and on that account refuse a decree in favor of the complainant.
*341 To this answer William Hardin, jun. replies, that he purchased the lots from Friend M’Mahan, and that the deeds were made to his father, in trust for him, and without any consideration, and that the bond of his father was executed to him without any other consideration than the trust, and that there was no power in his father to dispose of the lots. He alleges that the purpose for which the trust was created, was entirely unnecessary to be stated, as the purpose or object had ceased long before the sale to Baird. He denies that he ever sold his claim to his father, or that he ever received forty dollars, or any other sum, from him, in whole or part satisfaction for the lots. He admits that his father, after the sale to Baird, came to his *342 house in his absence, and offered forty dollars to his wife, as the price or balance; that his wife refused to receive it, whereupon his father left it, against his wife’s consent, where it has since remained, ready to be returned on application. He has no recollection of any conversation with his father about the damages that might be recovered, if he gained the estate. As to the claim of Mrs. Merry, he alleges that she made the purchase under execution, for his benefit and with his money, and that she has, since suit brought, relinquished her title, and he exhibits a deed to that effect. She also states the same matter, in substance, in her answer, and disclaims any further interest.
It seems, that by proper exceptions to such an answer, the real state of fact might be elicited; but if that course is not pursued, the court will presume that the transaction was concealed from motives of delicacy, not of fraud.
The guardian of Baird’s heirs, after having excepted, vaguely and unsuccessfully, to this answer to interrogatories, filed new interrogatories, in which he calls on the said William Hardin, jun. as well as William Hardin, sen. to say whether the deed was not made by M’Mahan to William Hardin, sen. by directions from William Hardin, jun. for the purpose of defrauding the creditors of said William, jun. and if it was not to delay them in the collection of their demands; and that they may be compelled to show that the legal title of said lots was ever out of William Hardin, sen. as proprietor of the town, before the conveyance to him from M’Mahan.
To these interrogatories William Hardin, jun. responded, that the title was made to William Hardin, sen. from M’Mahan; but he denies that the “ same was made for the purpose of defrauding creditors, or to hinder or delay them in the collection of their demands against him.” On the contrary, he asserts that “ he has not, at that time, a recollection of what, or any demands then existing against him. Nor was he ever found insolvent, but had always been able to pay off his debts; though, like other men, he had been hard run, he never, by any fraudulent devices, or conveyances, or shifts, delayed or defrauded his creditors.”
William Hardin, sen. in answer to the bill and the interrogatories put to him, admits the purchase of William Hardin, jun. from M’Mahan, and the conveyance to him by his son’s directions, and his bond to his son to convey, without any other consideration than the trust. He admits his sale and conveyance to Baird, and the consideration of $150 paid to him by Baird. *343 He alleges that he was the proprietor of the town, and that the title of the whole was originally in him; that by the burning of his house, most of his papers were destroyed, and that he could not find that he had ever parted with the lots originally, before he sold to Baird, and therefore he could not be under any obligation to convey, according to his bond to William Hardin, jun. if it was given, through the mistaken belief that the lots were not his, when M’Mahan had conveyed them to him; that he had since found that he had sold and conveyed one, but not the other, before the purchase of William Hardin, jun. from M’Mahan. He further alleges, that William Hardin, jun. had sold the said two lots to Martin Hardin, and had received, as he understood, the purchase money, except about forty dollars, and Martin Hardin had sold them to Kincheloe, and received part of the price; that, owing to the death of Martin Hardin, no conveyance was made, although he had the orders of William Hardin, jun. to convey them, first to Martin Hardin, and then to Kincheloe; that, understanding forty dollars was the balance claimed by William Hardin, jun. on said lots, when he sold to Baird, he took forty dollars to the house of William Hardin, jun. and paid it to his wife, who generally did the business of said William, jun. in his absence. He denies any particular conversation with William Hardin, jun. relative to the damages that could be recovered against him by Baird’s heirs. He states that the reason why the title was made to him, was, his son was, at the time, somewhat embarrassed, and declares that he only received the deeds to prevent the lots falling a sacrifice to creditors, and that the lots were conveyed to him to delay the creditors of his son, and that he never did, when called on, conceal the true history of the transaction,
During the progress of the suit, William Hardin, jun. exhibited an amended bill, stating that during the progress of the suit, he had rented one of the lots in question from the guardian of the infants of Baird, and given his note for the rent, on which he was sued and judgment obtained; that, as he believed the lots to be his, and that he was entitled to the rent and should recover it, as Baird’s estate was doubtful and could not discharge the demands against it, he prayed and obtained an injunction on the judgment at law, and pray *344 ed a discount of the judgment against the rents which he should recover in this suit.
The court below decreed that Baird’s heirs and William Hardin, jun. should convey the lots to the complainant, by deed with special warranty against all claiming under them; that the heirs of Baird should recover the original purchase moneys with interest, of William Hardin, sen. and also the improvement made thereon by Baird, after deducting the rents; and that William Hardin, sen. recover of William Hardin, jun. whatever sum was recovered against the said William Hardin, sen. by Baird’s heirs, for improvements, after rents were deducted. Commissioners were appointed to make an assessment of rents during the occupancy of Baird’s heirs or their ancestor, and also of the improvements made by Baird. They reported the rents to amount to $290, and the improvements of Baird to $308. A final decree was then entered for $18, the difference between the rents and improvements, in favor of Baird’s heirs, against William Hardin, sen. Nothing further is said in the final decree about William Hardin, sen. recovering that sum against William Hardin, jun. as was directed by the interlocutory decree. Each party was directed to bear his own costs. On the subject of the amended bill, the court dissolved the injunction with damages and costs, and dismissed the amended bill. From this decree Baird’s heirs and William Hardin, jun. both appealed.
On the subject of Baird’s having purchased the lots with full knowledge of the equity of William Hardin, jun. the proof is abundant, and he was cautioned on the subject of the purchase, by the wife of the said William Hardin, jun.; and when he went to take possession, he was cautioned by William Hardin, jun. not to improve, for the lots were his, and no improvements should be paid for. As to the purchase of Mrs. Merry at the sheriff’s sale, it does not appear that she ever received the conveyance of the sheriff; and if she did, her claim is certainly extinguished, and the recovery of the complainant below cannot be obstructed by it. As to the sale of the complainant to Martin Hardin, and by him to Kincheloe, set out in the answer of William Hardin, sen. it is shown by the deposition of Kincheloe, that there was such a sale, though he does not state its terms. It was, however, only a verbal *345 contract, and not completed after the death of Martin Hardin. Kincheloe also deposes, that William Hardin, jun. had agreed, unconditionally, to restore him the money which he, Kincheloe, had paid to Martin Hardin, and which Martin Hardin had paid to the complainant, on producing authority from Martin Hardin’s representatives. This matter can, therefore, furnish no ground against relief to the complainant; for if the representatives of Martin Hardin, or Kincheloe, shall have any valid claim to a conveyance of the lots, by virtue of their contract with the complainant, he will be enabled more completely to perform his contract and satisfy the claim, by a recovery of the title in this suit. It is shown that William Hardin, sen. had sold and conveyed both the lots, so that they had passed around to Friend M’Mahan, before M’Mahan sold to William Hardin, jun.; so that this defence against the bond must be unavailing. As to the defence that William Hardin, jun. received forty dollars, or any other sum, in satisfaction for the lots, from William Hardin, sen. it just rests as it is left by the answer of William Hardin, jun. and there is no proof that he ever accepted it; of course this furnishes no bar to relief.
It is objected, that the reception of title from M’Mahan by William Hardin, sen. and the execution of the bond to his son, being acts purely voluntary, will not present such a case as will authorise the chancellor to grant specific relief. To this it may be answered, that these acts constitute such a trust as the chancellor will enforce, as trusts constitute a large portion of his jurisdiction, and that the acceptance of the trust itself will form an adequate consideration, if the trust is based on laudable objects.
The only remaining objection, then, to the relief sought by the complainant, is, that the trust was created, not in the language of a trust, but with a design to conceal the estate and keep it out of the reach of creditors; or that, if it was not for that purpose, it was founded on some hidden and mysterious motives, and designed to answer some purpose not more laudable, and therefore improper to be disclosed, in the opinion of the complainant. It is true, that William Hardin, jun. has evaded, in his bill, and also in his answers, disclosing the purposes and objects of this arrangement, or the motives which led to it. He denies, however, that *346 it was for the purpose of delaying or defrauding his creditors. It is proved that he was somewhat embarrassed about that time, and that there were executions against him, which were afterwards eventually satisfied. The answer of William Hardin, sen. being an answer to the interrogatories of his co-defendants, cannot, according to any rule of equity, be admitted to prove any thing against William Hardin, jun. the complainant; nor, if it was in response to the bill stating affirmative matter, could it avail any thing against the denial of William Hardin, jun. without proof. It must be admitted, that his cautious evasion of a disclosure of the objects of the trust, clothed in the language of an executory contract, and not that of a trust, the proof that he was under some embarrassments, together with the difficulty of finding out what other motives, except the evasion of creditors, could have produced such a transaction, raise a strong presumption, that to escape creditors was the object; yet we cannot say that the fact is sufficiently established, according to the principles and rules of proceeding in courts of chancery, to be taken as true.
The question then remains, is not the presumption strong enough, that some other motives and objects, not more laudable, existed; and ought we, with regard to a trust thus veiled in mystery, which the complainant himself can, but will not explain, to grant specific relief, and not leave the party to his remedy at law? We have already said, that, from the state of the testimony, we are not permitted to draw the conclusion, against the answer of William Hardin, jun. that the object was the injury of creditors; and we are unable to conjecture, what other motive, improper in itself, could have produced the trust. The caution used by him in framing his bill and giving his answers, evidently betrays a reluctance to disclose the real object; but it is as easy to conjecture or presume, that motives of delicacy, without baseness, caused this reluctance, as that it arises from corruption or turpitude; and we ought not to presume the latter, while we may come to the conclusion, without proof, that there was nothing but innocence in the whole arrangement. To this we may add, that the vague exceptions to his answer, and the slight and inefficient endeavors made by the heirs of Baird to procure a disclosure, warrant us in passing over this ob *347 jection to specific performance, as too faintly urged in that court, to be valid here. We have no doubt, that with proper management of the cause, the real objects of the trust might have been elicited; but as the search after it was there abandoned, we conceive that we are not bound to pursue it here, so far, by conjecture only, as to make it a valid objection against the decree.
As the relief given by a conveyance of the lots, cannot, then, be affected by the revising power of this court, it is in the details of the decree alone, we are left to search for error, by the assignments of error made. The report of the commissioners assessing rents and valuing improvements, was excepted to in the inferior court; but the record does not show on what grounds the exceptions were taken, and we have not the least evidence afforded, that the report is unreasonable or erroneous in any respect, or that it does not conform, in every respect, to the principles of the interlocutory decree which directed it.
But it is insisted by William Hardin, jun. that the principles of that decree are erroneous, in directing the improvements to be assessed, under the circumstances of this case. As Baird was evidently a guilty purchaser, and was directed not to improve, we cannot perceive the principle of equity, which entitles him or his heirs to compensation for his improvements; and as we conceive them not entitled to such compensation, William Hardin, jun. ought not to be allowed the rents which arose from the improvements made on the lot by Baird. As William Hardin, jun. ought not to recover for an excess of the rents arising on Baird’s improvements, and Baird’s heirs ought not to recover for the excess of the improvements beyond the rents, an account of such rents or improvements was wholly unnecessary. The only account which ought to have been taken, was an account of the rents of the estate as Baird got it. For these the heirs of Baird ought to be made responsible; and we do not conceive that they are entitled to recover these rents, or any excess of their improvements, from William Hardin, sen. as directed by the decree. The sum to be recovered by them of William Hardin, sen. ought to be confined to the purchase money and interest paid by their ancestor, and their costs, and not, as has been contended, the increased value of the land; for if William Hardin *348 sen. committed a fraud in selling, their ancestor was a participator in that fraud, by purchasing with full knowledge of the equity of William Hardin, jun.
The set-off against the bond of William Hardin, jun. given for rent to Sterrett, the guardian of Baird’s heirs, setup by the amended bill, we conceive, so connects itself with the consideration of the bond or note, that it is a proper subject of discount in a court of equity; and as the assessment of rents, assessed according to this opinion, may result very differently from that directed by the court below, the decree on the amended bill, dissolving the injunction, must, as well as the first decree, be reversed, and a proper decree rendered giving the discount as the assessment of rents may now eventuate.
It is also assigned for error, that no costs were allowed the complainant in the court below. Had the infant heirs of Baird been bound to convey, by the contract of their ancestor, and the bill had been brought on account of their incapacity, it would have been proper to have relieved them from costs; but as the equity against them arises out of the wrong of their ancestor, we see no propriety in relieving them from the costs, allowing them a reasonable time after coming of age, to show cause against the decree.
The decrees must both be reversed, and the cause remanded, with directions to enter a decree in conformity with this opinion. William Hardin, jun. must recover the costs of all the appeals.